## DALTON *v.* CURRIER.

An assignment, by an insolvent debtor, of property in this State, for the avowed purpose and object of defeating its liability to be attached under the laws of this State—whereby, it is said, some of his creditors may obtain unjust preferences—and to secure all his property, to be applied for the benefit of all his creditors, is fraudulent and void against attaching creditors here.

A prior assignment under the insolvent laws of another State, will not prevail against a subsequent attachment of effects here, by a creditor resident in this State.

REPLEVIN, by the plaintiff, Joseph A. Dalton, as assignee in insolvency of Warren P. Davis, for thirteen hundred sides of African leather, valued at $2000, &c., alleged to have been wrongfully taken and detained by the defendant, John Currier, on December 30, 1857, at a certain tannery in Warner. The writ was dated January 29, 1858.

The case was tried upon the general issue, with a brief statement, avowing the taking by the defendant, as a deputy sheriff, October 10, 1857, of the property described in the writ, as the property of Warren P. Davis, of Salem, Mass., upon a writ against him in favor of the Warner Bank.

On trial it appeared that the property in controversy, prior to September 19, 1857, belonged to Davis. On that day he executed to James M. Caller, of said Salem, a bill of sale, as follows: " Know all men, &c., that I, Warren P. Davis, of Salem, &c., in consideration of $3500 to me paid by James M. Caller, of said Salem, have bargained, sold and delivered, &c., to said Caller, all the hides and leather—about three thousand sides, more or less, of African leather—in process of tanning, and tanned at the tannery occupied by me in Warner, &c. Also all the bark, tools, splitting machines, &c., at said tannery, &c. ; to have, &c., said property to said Caller, &c., to his and their own proper use, &c. And I, &c., will warrant, &c.,

Dalton *v.* Currier.

against all persons, &c." Executed under seal, September 19, 1857.

At the same time, and as part of the same transaction, Davis took from Caller an agreement under seal of the same date, as follows : " Whereas Warren P. Davis, of, &c., having good cause to believe that his property, situated &c., in New-Hampshire, is liable to be attached under the laws of that State, and thereby some of his creditors gain an unjust preference, and wishing to secure all his said property to be applied for the benefit of all his creditors, has conveyed all his real and personal estate, situate in Warner, &c. :  Now the said Caller hereby binds himself, &c., to hold the said property in trust, to sell and dispose of the same, and forthwith, after deducting all costs, &c., to divide, distribute and pay over the residue, &c., among all the creditors of said Warren P. Davis, ratably, and in proportion to the amounts due to each of them respectively, and without any preference or priority, &c., and the balance to said Davis, &c.  But it is expressly understood, &c., that if said Davis shall institute proceedings in insolvency, &c., under the laws of Massachusetts, then said Caller shall hold said property only upon the trust to convey, &c., the residue, &c., after deducting the expenses, &c., to the assignee in insolvency, to be equally distributed, &c., according to law, &c.  But said Caller shall not be chargeable, &c., for more than shall be actually received by him, &c., nor accountable for losses, &c., without his wilful default or neglect," &c.

There was no other consideration for said bill of sale than said agreement.  Caller was a creditor of Davis to the amount of $600 or $700.  After receiving said bill of sale, Caller came to Warner, took possession of the property, had the bill of sale recorded in the records of mortgages by the town-clerk, and left the property in the hands of an agent to be tanned.

Dalton *v.* Currier.

On the 7th of October, 1857, Davis was decreed an insolvent debtor by the proper court in Massachusetts, and the plaintiff appointed his assignee, and a decree passed transferring to the plaintiff all the estate of Davis; and on the 8th Caller executed to the plaintiff an assignment of his bill of sale from Davis.

On the 15th of October, 1857, the plaintiff came to Warner, learned that the property had been attached, and he subsequently commenced this action and took the property into his possession.

A director of the Warner Bank attended the first meeting of Davis' creditors, proposing to prove their claim, but being informed that the bank must first surrender certain collateral security they held, the claim was not presented, and this suit was commenced and the property attached. Their claim was justly due, and judgment has been since recovered in the action.

The security held by the bank exceeded the amount of the note, but it was deposited, not by Davis, but by one of his sureties.

The court found for the defendant, and assessed damages, subject to the opinion of the whole court.

*L. W. Barton* (with whom were *Flint & Bryant*), for the defendant.

(1.) The bill of sale from Davis to Caller is, on its face, an absolute, unqualified conveyance, and the case shows it to have been given without any valid consideration. It is, therefore, void. It was not made to Caller for the purpose of paying any demands he might hold against Davis, or accepted by Caller for that purpose. The want or failure of consideration may be a good defence against an action on a sealed instrument. *Gray* v. *Handkinson,* 1 Bay. 278 ; *State* v. *Guillard,* 2 Bay. 11 ; *Swift* v. *Hawkins,* 1 Dall. 17 ; *Solomon* v. *Kimmel,* 5 Binn. 232 ; *Case* v. *Baughton,* 11 Wend. 106. But it is contended that the bill of sale and

the agreement are to be taken together, as reciting one transaction, but we submit they cannot be so considered. It would open the door to fraud to allow such stipulations as are contained in these instruments to be made on separate papers.

But if the court shall hold otherwise, then we say that the assignment was void as to the creditors of Davis. The instrument on its face shows an attempt to evade the attachment laws of this State, where the property in question is situated and the creditors of Davis reside. It puts the right to hold the property under the assignment made in Massachusetts, on the ground of prior possession, thereby admitting in fact that an attachment made in New-Hampshire before the completion of the assignment would render it void.

The assignment to Caller was made for the express purpose of taking from New-Hampshire the rightful jurisdiction over property within her limits, and subjecting it to the operation of a foreign law, thereby depriving our citizens of the rights which our laws afford them for the collection of their demands.

(2.) We contend that the assignment is void, because it relates only to a part of Davis' property, and is not in accordance with the provisions of our statute. Revised Statutes, chapter 134.

(3.) The assignment is not valid, because the assignor did not make the oath required by our statute.

(4.) It was made to be executed in New-Hampshire, and its validity is to be tested by the laws of this State. *Dyer* v. *Hunt*, 5 N. H. 401. We further contend that the agreement from Caller to Davis is void, because by its terms Caller is only liable for the property he might actually receive. This exempts him from any obligation to the creditors to use any diligence or make any effort to obtain the property. This opens the door to gross frauds, at the very point where fraud would be most ex-

Dalton *v.* Currier.

pected. *Spinney* v. *Hosiery Company*, 25 N. H. 9 ; *Hurd* v. *Silsby*, 10 N. H. 110. It is suggested that the assignee was a creditor of Davis, but we are unable to see how this can affect the nature of the assignment, or his rights under it.

The position taken in the plaintiff's brief that it is an assignment under the common law, and is not of the character prohibited by chapter 134 of the Revised Statutes, cannot, we think, be sustained. Upon an examination of *Meredith Manf. Company* v. *Smith*, and *Buffum* v. *Green*, cited and much relied on by the plaintiff, it will be seen that they do not apply to the case at bar. Undoubtedly an insolvent debtor may give a preference to one creditor, by paying his debt in full, to the exclusion of all other creditors, if done in good faith. These were assignments not within the meaning and intent of the statute, and were not intended to be. The language of the assignment of Caller to Davis forbids any such conclusion. But the plaintiff claims title to the property by virtue of his appointment by the court of insolvency of Massachusetts, transferring to him all the estate of Davis. The subsequent conveyance from Caller to the plaintiff of the same estate seems to us not to be here a matter of inquiry ; beside, it appeared on the trial that the conveyance was without consideration. But Caller's possession under the bill of sale cannot enure to the benefit of the plaintiff, he, as we have seen, not claiming title to the estate by his conveyance from Caller, but from the court of insolvency. When the contingency happened, contemplated in the assignment of Caller to Davis, his possession became void. He ceased to have any interest in the property conveyed to him which he could enforce or protect.

The assignment to the plaintiff was incomplete when the goods were attached on the writ in favor of the Warner Bank. No possession had been taken. Delivery was necessary to complete the transfer. *Blake* v. *Williams*, 6 Pick. 303, 304; *Lanfear* v. *Sumner*, 17 Mass. 110. But

had the plaintiff taken possession of the property before the attachment of the same by the bank, he could not, we think, prevail in this action. The case of *Saunders* v. *Williams*, 5 N. H. 213, is decisive on this point. It was there laid down by the court, that "it must now be considered as a part of the settled jurisprudence of this country, that a prior assignment in bankruptcy, under a foreign law, will not be permitted to prevail against a subsequent attachment by an American creditor of the bankrupt's effects found here." *Blake* v. *Williams*, 6 Pick. 286. The weight of American authority is decidedly for restraining statutory assignments, so that they shall operate interterritorially only. Story Conf. of Laws 347. Personal property as against creditors has locality, and the *lex loci rei sitæ* prevails over the law of the domicil with regard to the law of preferences in the case of insolvent estates. 2 Kent's Com. 406. It is laid down by the same learned judge, that the laws of other governments have no force beyond their territorial limits, and, if permitted to operate in other States, it is upon a principle of comity, and only when neither a State nor its citizens would suffer inconvenience from the foreign law. Our courts will not subject our citizens to the inconvenience of seeking their dividends abroad, when they have the means of satisfying them under their own control. 2 Kent's Com. 406, 407 ; 6 Binn. 353 ; *Ingraham* v. *Gyer*, 13 Mass. 146 ; *Saunders* v. *Williams*, before cited ; *Blake* v. *Williams*, 20 Johns. 229. In this last case the law relating to assignments under a foreign bankrupt law was most ably and fully discussed. As to the effect to be given to a foreign insolvent law, the rule laid down by Justice *Story*, is " *quatenus sine prejudicio indulgentium fieri potest.*"

*George & Foster*, for the plaintiff.

The assignment and agreement of Caller and Davis are to be taken together as reciting one transaction. By these

instruments it appears that Davis assigned to Caller his property in New-Hampshire, being but a portion of all his property, in trust that Caller should apply it, or, in a certain event, transfer it to another, to be applied toward the payment of all Davis' debts, which trust Caller accepted and bound himself faithfully to perform.

It is contended that the assignment was void, as against the creditors of Davis, because it embraces only a part of Davis' property, and was not sworn to. But this is an assignment under the common law, and is not of the character prohibited by chapter 134 of the Revised Statutes, which is a reënactment of the statute of July 5, 1834. An assignment of part of a debtor's property, for the payment of one or all of his creditors, is valid. The law of 1834 and the oath of the party was intended to guard the creditors against the fraud of having only a part of a debtor's property assigned for their benefit, when he contracted to assign the whole. *Meredith Manf. Company* v. *Smith,* 8 N. H. 347. Such common law assignments are practically more frequent than assignments under the statute, and our courts have never questioned their propriety. *Buffum* v. *Green,* 5 N. H. 71 ; *Haven* v. *Richardson,* 5 N. H. 113 ; *Meredith Manf. Company* v. *Smith ; Low* v. *Wyman,* 8 N. H. 536 ; *Barker* v. *Hall,* 13 N. H. 300. They need not be recorded nor expressed in writing. The property will pass by delivery, accompanied by a parol agreement, and the rights of the assignee will be protected. *Meredith Manf. Company* v. *Smith.* Therefore it follows, that a preference thus given is as valid as the precedence gained by attachment, and is not contrary to the policy of our laws. The law permits attachments, and it equally authorizes preferences,—not less should it be inclined to favor an assignment for the benefit of all the assignor's creditors, wherever located. It is not prejudicial to the rights of our own citizens, that foreigners have equal rights with them in the race of diligence under the attachment laws.

*Union Bank* v. *Kerr*, 7 Md. 88, 16 U. S. Dig. 71; *Frazier* v. *Fredericks*, 4 Zab. 162; *Caskie* v. *Webster*, 2 Wallace, Jr., 13; 14 U. S. Dig. 53.

The assignment and agreement being considered together, and covering one transaction, a sufficient consideration is expressed, namely, the covenant of the assignee. *Haven* v. *Richardson*, 5 N. H. 128; *Gates* v. *Labeaurne*, 19 Miss. (4 Benn.) 17; 16 U. S. Dig. 72. The further consideration of Davis' indebtedness to Caller appears by the case. But the seal imports a consideration, and none need be expressed. 1 Pars. Con. 354. But if a parol agreement, accompanied by delivery, were sufficient to pass the property, then all the papers, with their defects, if they have any, may be set aside; and it is apparent that Caller acquired a valid title, which he might lawfully assign to the plaintiff in accordance with his agreement.

The objections suggested by the court in *Spinney* v. *Hosiery Company*, 25 N. H. 9, do not apply to this case. That was an assignment under the statute, and could not be incumbered by any condition. In that case it was holden, that because of the conditions the assent of the creditors could not be presumed; and because neither of the assignees were creditors, and there was no evidence of the assent of any creditor, the trustee in the suit, one of the creditors, was charged with the whole amount in his hands. In this case the assignee was a creditor.

If it be said that the assignment is void, and passes no title, because of the secret trust expressed in the agreement, we will examine that proposition. The general rule is thus expressed in *Coburn* v. *Pickering*, 3 N. H. 424: " A sale of goods, in order to be considered as made *bonâ fide* with respect to creditors, must be made without any trust whatever, either express or implied." The reasons upon which this rule is founded are very clearly defined in the opinion of the court, by *Richardson*, C. J.: " It is not permitted to a debtor to convey away his goods by sale, with

Dalton *v.* Currier.

any secret understanding between him and the vendee that the goods shall be holden for the benefit of the vendor, in any way whatever." "Any thing of this kind is a trust, and what the law denominates a fraud." "All conveyances, with secret reservations for the benefit of the vendor, tend directly to hinder and delay creditors. They hold out false colors and false appearances, and mislead and deceive creditors. They give to the property of the vendor the appearance of belonging wholly to another, when, in truth, he has an interest in it, concealed under the trust. It is for this reason that a trust of this kind is in law a fraud." *Cessante ratione legis, cessat ipsa lex.*

Like the possession of goods by the vendor, after an absolute bill of sale—which is always *primâ facie,* and, if unexplained, conclusive evidence of a secret trust, rendering the conveyance fraudulent and void as against creditors— the matter is susceptible of explanation; and, though the burden of explanation is cast upon the vendee, yet, if he can relieve himself of that burden, the conveyance will stand. *Coburn* v. *Pickering,* 3 N. H. 424; *Bartlett* v. *Williams,* 1 Pick. 295.

In this case the secret trust is not beneficial to the vendor; no interest in the property remains beyond a right to the surplus after the payment of all his debts, and the policy of our law favoring equitable assignments equally with the preferences gained by attachment, it would be strange if a rule of law were to be regarded as so inflexible, that senseless words should control and destroy sound reason and policy.

If, then, the assignment in connection with, or notwithstanding the trust expressed in the agreement, were sufficient to convey the title to Caller, then the inchoate rights of attaching creditors were divested, and the conveyance of Caller to Davis is not open to inquiry here.

---

*Dalton v. Currier.*

---

BELL, C. J. The assignment made by Davis to Caller was fraudulent and void as against the creditors of Davis, because its avowed purpose and aim, and its only object and consideration, as stated in the agreement, or declaration of trust signed by Caller, was to defeat its liability to be attached under the laws of this State, where some of his creditors may obtain an unjust preference, and to secure all his property, to be applied for the benefit of all his creditors.

In the case of *Blodgett* v. *Webster*, 24 N. H. 92, it was held that, if conveyances are made by a debtor, with intention to secure himself any benefit or advantage, or to place his creditors at a disadvantage in collecting their debts; or if his object is to secure the property for the benefit of his creditors in his own way, without their knowledge or consent, it is a fraud in law; or, as it is otherwise expressed, deeds made to keep the property of the debtor from his creditors, and prevent them from taking it to secure and satisfy their debts, and so leave it in the power of the debtor to take his own time, and use his own manner for applying it to the payment of his debts, would clearly be made to delay creditors, and deprive them of the right, which the law gives them, of taking their remedy into their own hands under legal process; and this would be such a fraud as would render the conveyances void as to creditors.

In *Seavey* v. *Dearborn*, 19 N. H. 358, the court, by *Woods*, J., say : " The instructions of the court, that if the design of Hills in selling the goods was to place his property out of the reach of legal process, and to delay his creditors more than they would be delayed but for the sale, such a design was fraudulent, appears to have been clearly within the meaning of the statute of frauds, and the decisions under it." *Robinson* v. *Holt*, 39 N. H. 557.

Before the attachment made by the creditors in this case, on the 10th of October, proceedings had been com-

menced on the 7th against Davis, the debtor, who was, it seems, a resident of Salem, in Massachusetts, before the court of insolvency of the county of Essex ; he was decreed an insolvent ; the plaintiff regularly chosen and appointed assignee, and a decree passed by the court transferring to the plaintiff all the estate of Davis.

On the next day Caller executed to the plaintiff an assignment of the property included in Davis' bill of sale to him.

The effect of these assignments upon the title to the property, as against other creditors of Davis, who have chosen to attach, is here in question.

And, first, the effect of the decree transferring Davis' property to his assignee. As to this point, the decision of the court in *Hall* v. *Boardman*, 14 N. H. 40, is conclusive, where *Parker*, C. J., says, in reference to the statute of Massachusetts here in question : " It being conceded that all the proceedings were regular, the assignment was valid to pass the property in the hands of the person now summoned as trustee, and the moneys collected by him are now payable to the assignees, unless some other right has intervened since the assignment, and which is superior to it. *Saunders* v. *Williams*, 5 N. H. 213.

The same principle is held by the court in 5 N. H. 214, where the court say : " It has been thought by some that a transfer of personal property to the assignees of a bankrupt, agreeably to the laws of the country where the bankrupt has his domicil, was equivalent to an assignment of the same property by the bankrupt himself, and so passed the title, wherever the property might be. But it must now be considered as a part of the settled jurisprudence of this country, that a prior assignment in bankruptcy under a foreign law will not be permitted to prevail against a subsequent attachment by an American creditor of the bankrupt's effects found here." 2 Kent

---

Dalton *v.* Currier.

---

Com. 329; *Blake* v. *Williams*, 6 Pick. 286; 4 Cow. 410, note; .20 Johns. 229; 5 Cranch 289.

The rule which must give effect here to a bankrupt law of a foreign jurisdiction, is a mere rule of comity, and not of international law ; and, in the present circumstances of this country, it is thought that no rule of comity can require us to give effect to a foreign law of bankruptcy here, in such a manner as to deprive our own citizens of the remedy which our laws give them against the property of foreign debtors, which may be found in this country.

The same exception is expressly recognized in *Sanderson* v. *Bradford*, 10 N. H. 264, where *Parker*, C. J., says : " But the settled doctrine maintained by the courts here is, that a prior assignment in bankruptcy, under a foreign law, will not transfer the property, as against a creditor of the bankrupt who is a citizen of the government where the property is situated, or the debt due. 2 Kent Com. 330, 524; *Saunders* v. *Williams*, 5 N. H. 213; *Ogden* v. *Saunders*, 12 Wheat. 215."

The assignment by the court of insolvency would not be effectual to transfer this property, as against a subsequent attachment of the same property by a New-Hampshire creditor under our attachment laws.

The assignment made by Caller was at most a transfer of the title acquired by him under his bill of sale, just as he held it. It was not a case of a *bonâ fide* purchase for a valuable consideration, which might give a better right than the assignor himself had, and perhaps might entitle him to hold the property absolutely, notwithstanding the defeasible character of his assignor's interest. It was, and it professed to be, merely a transfer of such title as he had acquired by Davis' bill of sale. As against the defendant, representing the rights of a creditor of Davis, that bill of sale was voidable, and the title defeasible.

It was so in Caller's hands, and no less in those of the plaintiff.

The titles, then, set up by the plaintiff, being none of them valid against the defendant, there must be

*Judgment for the defendant.*